with Hanks versus lots of other folks. So we'll begin with you, Mr. Hennig. Just give us a second to get set. You reserve three minutes for rebuttal, is that right? That's correct, Your Honor. I'd like to start with the motion to dismiss, because that was requested for briefing. And I think the first thing I would like to address, which is covered in the pleadings, which is covered in the briefs, is there is no support for the concept that was a part of the party. Was a party means to me was a recent party. And that's essentially what appellees or defendants are seeking to have from this court. Isn't the statute is a party, not was a party? Well, it's defined in federal rules of appellate practice for as being essentially, you know, the case law was a party. Because is a party, it makes no sense. It's a no, because the dismissal means that it's no longer a party. And I think that that's clear. I would like to address this in one way that's not covered in the briefs, I think, or not real expounded, in the sense that the United States government was present at these proceedings and is a party currently because we can, and we know that, because the United States filed a motion to set aside. And prior to that motion for set aside, the United States did not have to appear or intervene because it was currently a party. In other words, on the motion to set aside, the motion for set aside is relevant because it demonstrates the United States participation or active interest as a party in this litigation. Well, it seems that one could argue that the district court just neglected then to make them file a notice of appearance as sort of a third party asserting an interest, right? I mean, I don't think that's going to solve this problem. There's no case in this circuit that resolves this, right? That is true. And this is a case of first impression in a sense. But what we're seeking to do, what the defendant's appellees are seeking to do in this case is to create a, go from a bright line test, which simply says if the United States intervene in the action, which is consistent with the Eisenstein decision, if it intervened in the action, now it says, well, it has to intervene as to the current pleading. Isn't part of the problem here that what happened isn't really consistent with the statutory scheme in the first place? In other words, 3730 provides that the government may elect to intervene and proceed with the action. It refers repeatedly to the action, which suggests that the government, once it intervenes, is basically in the action for all purposes. But the government here intervened but purported to do so only for limited purposes and then purported to decline to intervene with respect to the later amended complaints. How does that square with the statute? And if it's not squareable with the statute, how does that bear on the issue before us? Well, two points. First, the government declines to intervene as to amended pleadings, but that doesn't mean that the government is not a party. I mean, you're looking to the status of the government as it exists here and now, right? And you're looking to the United States government as to what actions it took in the entirety of the litigation. So that the idea that you have a declination to intervene as to later complaints does not mean that the United States ceases to be a party. But the operative pleading is a Fifth Amended complaint, right? Correct, Your Honor. And the United States is not a party to that, are they? I mean, they're not a party to that, are they? They're not a party to that. They're not involved in the operative pleading, correct? The United States is. They decline to intervene. Your Honor, I would say to the court that to the extent that this court is going to create a new rule that makes an exception to the very bright line test that once the government intervenes, it is then a party and says it has to be the current pleading. It must be the current pleading. First of all, it makes an exception to that bright line. So now you have to look at the current pleading. It is an equally bright line. I don't know. I'm not sure that either of these are hard lines to draw. They're just hard to square with the statute. But I would say the United States is here present at this argument before the court of appeal. So a common sense. I mean, explain to friends or relatives or family who are not familiar with the law that the United States can be a party to this present appeal but not be and therefore dismiss. I'm sorry, Your Honor. With respect to a collateral matter, the setoff motion, which is separate and distinct from the merits determination that's also here on appeal. That's true. But the point I'm trying to make, Your Honor. You go back one minute ago, you said that Amgen is no longer a party. Is that? It was dismissed. Okay. So it was dismissed by the stipulation filed with the district court, correct? That's correct. But why did that stipulation not terminate the United States as a party, too, since its intervention had been limited to the claims with respect to Amgen alone? It was never — there's nothing in the stipulation that says the United States was dismissed. There's nothing there. The United States continued to monitor and be involved and was still served with all pleadings as any party would but not having an interest. So the idea that there — so if you look to the parameters, the four corners of that agreement and how it was entered into the district court, there was no actual dismissal of the United States. If I may, I do want to turn to the larger issue, because I do think this is a thing. And I want to focus on the United States ex-relator Wood v. Allergan case and the first-to-file rule. And I want to focus on two issues. The first issue is that Wood talks about, for all three plaintiffs or all three cases, free cataract surgery recovery kits or patient post-surgery supplies. In other words, the Wood case has the same factual issue for each of the three cases. In other words, Wood stands for the proposition that when you have the same essential fact, you have a first-to-file issue and there is a dismissal of the later cases. Here, however, as we point out in the opening brief, there is a very broad statutory scheme — or, excuse me, a very broad statutory scheme that involves the active participation of the medical providers and suppliers and groups. In the Hanks case versus in Piacentelli, what you have simply is the filing of fraudulent receipts or fraudulent applications to the government for reimbursement. In other words, the Piacentelli case does not flesh out a hub-and-spoke theory of conspiracy. It merely makes an allegation as to one individual defendant that is guilty, if you will, of participation in Amgen's scheme, but does not flesh out the active participation that that particular defendant. The second issue, and I think this is actually the most important part here, is that the district court improperly expands Wood, not just in terms of factual allegations, but also in terms of defendants. Here, again, I would ask the Court to limit Wood to any defendant. So even if you find that the same individual defendant, as the district court knows, there's one individual defendant that is in both the Piacentelli case and the Hanks case, even if you find that individual defendant is the same fraudulent factual scheme under Wood, that does not mean any of the other defendants here at issue are part of that same fraudulent factual scheme. And most importantly under Piacentelli. Alito, is it any time you name a new defendant that that resets the whole thing? You can answer. Go ahead. Answer that, yes, because the reason is that it's not a related action, Your Honor. And it's not a related action under the case law. And there's bountiful case law that says that the key issue in terms of related is the whether there's a defendant, whether the party is a defendant in both of the actions. Go ahead. Can I ask you to just address the public disclosure bar issue for a moment? And a couple questions. First, do you agree that the pre-2010 language applies here? Yes. Okay. Second, do you agree that it's the plaintiff's obligation to plead and ultimately prove the existence of subject matter jurisdiction? Yes. Okay. And so if that is the case, how could the district court basically punt on that question and say that it's not clear from the pleadings whether there's subject matter jurisdiction? Doesn't that require him to either dismiss for lack of subject matter jurisdiction or at least grant leave to appeal to clarify the pleadings? Well, to answer your question briefly ---- Leave to appeal or leave to amend? The district court's actions, I will not comment on the district court's actions and its unusual decisions, shall we say. What I would tell the court here is for purposes of the public disclosure, there is a requirement that if you're going to find a public disclosure, that you in fact allow leave to amend. I think the district court's rationale was that because the first-to-file bar was determinative, it need not decide that issue. The law requires you to address subject matter jurisdiction before reaching the merits, correct? I agree, Your Honor. So that would be on the district court. But I would say to this court ---- Right. So I think the point is should we be affirming on other grounds, i.e., the lack of subject matter jurisdiction because of public disclosure? That's, I think, the issue. Well, that could be. But, Your Honor, the crucial difference is that you would allow leave to amend. And that would be a requirement. I don't want to get into the merits. I can do that if you want in terms of the public disclosure rule. But the key point here is that you allow leave to amend versus just simply dismissal. Okay. You reserved three minutes. I did. So we'll hear now from the United States, which may or may not be a party. You didn't know where to sit when you got here, I see. I didn't. May it please the Court. Julia Vetta, for the United States, which is not a party to the appeal, but was a party to the suit below. Was a party. Was. How about now? Are you a party? Yes, Your Honor. For purposes of Rule 4, we are. And the reason why ---- What's your basis for saying that? Beg your pardon? What's your basis for saying that? The completion or conclusion of the United States' involvement in a False Claims Act proceeding does not annul its party status once it has intervened. And what's your basis for saying that? The Sixth Circuit has so held. And it's a ---- and the Fifth Circuit has held so held in related contexts. And the Eisenstein case basically stood for the proposition that if we never intervene, we're never a party. But once we are a party, then it becomes ---- Once a party, always a party? It's a factual question at that point. And you look to the terms of the dismissal order, which in this case did not dismiss the United States. I think if it had, we would be in a different position here. We would be saying, well, we weren't, we are, our party status was formally terminated by the court. Here, we express ---- I guess if you're not an intervener, then what are you? We weren't. You're just an ---- well, you were an intervener with respect to certain causes of action against Amgen. That was settled. So what are you at that point? You're just sort of an interested bystander that's still a party? We remain an intervener with respect to claims that were settled, and we have the right to intervene and are presented with that right and expressly disclaim it on multiple occasions in the record as to each amended complaint, which brings in new defendants. The government is now here in the suit, getting served with process, as has been noted, and formally coming into the court and saying, no, thank you as to this. We will not intervene as to this defendant. And a nonparty wouldn't have that right. We wouldn't be able to ---- Well, a nonparty wouldn't have that right. You, by virtue of the statute, have to be notified every time they're trying to bring one of these claims. Every time there's an amended complaint, they have to go to you to see if you want to jump in, right? Well, we don't have to be present at every status conference in a proceeding in which we have not intervened to express our continuing choices as to intervention with respect to defendants. Well, you have to make a choice every time they amend, right? That's right. Whether you do it in the courtroom or you do it from the comfort of your own home, I don't think really matters much, but ---- No, Your Honor. We think it does. You think it does? Why? Because once you're a party, you're participating in the court proceeding. And before you are a party, you are, in fact, making that decision offline, as it were. The government has a statutory right to intervene at any point in a False Claims Act proceeding, but until we do, we're not a party under Eisenstein. Once we have, as here, then the procedure is different for us to intervene again as to other claims, but our party status is unchanged once we have rung that bell. How do you square that with the submission you made before the district court in which you say that the United States declined to intervene and currently is, quote, only monitoring the action? I think that was a fair statement of our role at that point, Your Honor. It does not disclaim our party status. We were monitoring. And we, by the terms of the dismissal order, only the defendant with whom we had settled was formally dismissed from the action. We remained a party, if nothing else, under the express reservation of jurisdiction in the district court to adjudicate eventual fee disputes, which, as has been noted, is why we're here now. Because we don't believe the district court could have endorsed that stipulation saying, A, I exercise, you know, retain jurisdiction to adjudicate any fee disputes. B, the clerk of court is directed to terminate the United States as party because its interest in this matter has been resolved. Had the district court so concluded, the facts here would be different, and we would have to intervene again. But doesn't that suggest that the retention of jurisdiction to adjudicate any fee disputes is irrelevant to the question? Not where the United States has not been expressly dismissed. I mean, the fact is, we did not have to reappear. But then the gravamen of your argument is that it's the lack of express dismissal. It's not the retention of jurisdiction. I just want to focus on what's critical here. That may be a distinction without a difference on the facts that we're – had there been an express dismissal of the United States, it would be a lot more difficult for me to stand here and argue that we remained a party. Absolutely. But I don't think we can discount the express reservation of jurisdiction because that contemplated further activity in the proceeding by the United States. And the case law fairly uniformly agrees that it's ongoing activity by the United States in a proceeding, even if its claims have been long ago resolved, that's dispositive of party status. Is it your view that Amgen was, therefore, still a party because the district court retained jurisdiction? Amgen would not have been a party to any fee dispute under the terms of this – the stipulation for dismissal. And Amgen was, in addition, formally dismissed. But the settlement, they would have still had jurisdiction for purposes of the settlement, right? I imagine they would, Your Honor. There wasn't a retaining of jurisdiction just for fee disputes. It was to enforce the settlement agreement, right? It was to enforce the settlement. I'm now consulting – my time is up, and I'm consulting the language of the order. But within the context of the relator's share, the language reads, this dismissal is without prejudice to the right of the relator to reinstate the proceeding on written notice to the court for the limited purpose of asserting relator's rights to a relator's share payment from the United States. It's not contemplating any further dispute between the United States, Amgen, and the relator. The potential involvement of the United States going forward is with respect to the relator, and it's only on the face of this document. All right. Thank you very much. Thank you. We'll now hear from Mr. Palmore. You guys are dividing up time, 6 minutes each. Yes, Your Honor. We're presenting an argument on behalf of all defendants, and we're dividing time. I'm Joseph Palmore. And I'm – with the Court's permission, I'm going to address the timeliness issue in first to file, and Mr. Krauss will address public disclosure and Rule 9b. The appeal here was untimely because the United States was not a party to this case at the time that judgment was entered. And I think the history here is important. The government intervened for a limited purpose. That was to settle with Amgen and then declined to intervene more broadly. But that's not all. Then there was a third amended complaint in which the U.S. expressly declined to intervene. There was a fifth amended complaint in which the U.S. expressly declined to intervene. As the courts held, both this Court and the Supreme Court held in Eisenstein, even this decision of whether or not to intervene would be unnecessary if the U.S. was already a party. So the U.S. decision not to intervene meant that it was not a party. Doesn't the United States have a continuing interest that's being expressed and manifested right now? Well, the U.S. has said in – on page 22 of its brief that it's a party to this appeal only with respect to the Court's jurisdiction over the set-off motion. And this Court has already held it doesn't have jurisdiction over the set-off motion. Now, of course, the U.S. is a real party and interest in all key TAM cases. That's the argument that was at issue in Eisenstein and was rejected as a basis to give it party status. What – what matters with – for Eisenstein is intervention. And here, with respect to the operative complaint, the U.S. declined to intervene. The U.S. asked to be exercised its right under the statute to have – get copies of the pleadings. But Eisenstein held that, too, would be unnecessary if the U.S. were already a party because it would automatically have that right. The – Can you answer the question that I asked counsel, which is how do you square that with the language of the statute generally? The statute speaks about intervening in an action, which would suggest that once it's intervened, it has – it remain – it is and remains a party unless and until it's terminated.  And this particular claim, this particular complaint, those are sort of, you know, almost irrelevant because they're not contemplated by the statute. Can you respond to that? Yes, Judge Sherman. I think the answer is that, consistent with the settled rule that an amended complaint renders everything that happened beforehand basically irrelevant, it resets the case. And what happened here and what happens in these key TAM cases is when there's an amended complaint, it's filed under seal. The U.S. gets it 60 days to decide whether to – I mean, yes, it supersedes the prior complaints. But, for instance, in Wood versus Allergan, you can't cure the first-to-file defect by amending the complaint. It's not treated as being brought or a new action at that point. Wouldn't the same principle apply here? I don't think so, Your Honor. And that's certainly not the practice. And I think that would be contrary to the whole purpose of the sealing requirement, which is to not put a defendant on notice of a claim until the U.S. has decided whether to take it over. When there's an amended complaint that adds defendants, that adds new claims, the U.S. needs time to look at that. And that's why it's the consistent practices that it's filed under seal. And that sealing requirement is tied to the intervention decision. And here, in both cases, the U.S. declined to intervene. And that benefited the U.S. It wasn't subject to discovery. This is another point that the Court made in Eisenstein is that there are costs and benefits to being a party, and that's why Congress gave the U.S. the choice of whether to become a party through intervention. And one of those costs is being subject to mandatory discovery. And so I think it would be the U.S. might – they're here today saying they were a party, but the implication of that is they would be subject to mandatory discovery, even in cases where they've declined to intervene. Wouldn't it be a better rule, you know, to avoid traps for the unwary, which is another principle that you see in the Court's jurisprudence, to just say once the United States has intervened, it remains a party unless until it is formally terminated by the district court? In that case, you know, if the court or the opposing party sought to, you know, impose the duties and responsibilities of party status on the United States, the United States could rush in and say, Your Honor, please terminate us as a party. We're no longer a party. Our interests have been resolved. But if it doesn't do that, why isn't it a better rule just to say once the United States has intervened, it remains a party for all purposes until – or for purposes of Rule 4 unless and until it's terminated? Two points, Your Honor. One is our rule is also a bright-line rule. Did the U.S. intervene with respect to the operative complaint? Second, there's no trap for the unwary here, and this was at issue in Eisenstein as well, because if there's any uncertainty, all you do is you file a notice of appeal on day 30. You don't wait until day 51, as Relator here did. And that's a ministerial, easy thing to do. If I could shift very quickly, since my time is limited to first to file, I think the district court was – got this exactly right. The – if you look at the Piacentelli complaint and compare it to the original complaint in this case, the allegations, as the district court held, are basically identical with respect to unreported discounts, with respect to marketing the spread, with respect to off-label promotion, with respect to – This just identifies some of the other sort of co-conspirators, right? It names new defendants who were involved in the same scheme. Exact – new customers, basically, right? So the scheme was Amgen was kind of the wrongdoer under both schemes, and then customers were accomplices, basically, and were pocketing the spread. So that was the same allegation in both cases, and Piacentelli made that allegation with respect to a corporate affiliate of my client, actually. And a relator here has just alleged new customers. And I heard him suggest that a relator can always get around the first-to-file bar by just simply suing different customers. Here, there are, of course, hundreds or even thousands of Amgen customers, and that would suggest when a relator could serially go through and avoid the first-to-file bar just by naming new customers, and I think that would circumvent the entire purpose of that rule, which is to incentivize relators with information to quickly go to the government and provide it so that the government can investigate and stop the fraud. Jumping back to the notice of appeal, if the notice of appeal was filed late, then there's no appellate jurisdiction. And then the question becomes what are we supposed to do about a joint motion by the United States and Hanks to remand? Well, that motion has already been denied, Judge Jacobs. So I think it's that's taken care of because it was a collateral issue. And that goes by whom and when? It was denied by a panel of this Court in October. On this appeal? Yes, Your Honor. It was a motions panel on this appeal. The motions panel on this appeal denied that motion. I understand, but they decided it. They decided it, and the United States evidently had an interest in it. Well, it had an interest only with respect to that collateral issue. This is footnote 2 of Eisenstein from the U.S. Supreme Court. But it was in this appeal that they had the interest. It was in this appeal, Your Honor. So perhaps the Court could decide if it doesn't, if it concludes it doesn't have appellate jurisdiction, perhaps it vacates that remand order. But I don't think that changes the fundamental bottom line here. If there are no further questions, I'll turn things over to Mr. Krauss. Thank you, Mr. Palmore. Good morning, Your Honors. Lawrence Krauss. I'll speak on public disclosure and then on 9b. With regard to public disclosure, it is clear that the district court determined correctly that there had been multiple public disclosures of the essential elements of the claims that Mr. Hanks is bringing, and therefore the public disclosure bar applied. Now, having done so, it's Mr. Hanks' burden to establish that he is an original source. And that's where the district court did some work but didn't do all the work it could have done or should have done. And I think it's important to notice that in original source, there are two criteria that need to be satisfied. Both of them need to be satisfied in order for the relator to be the original source. And one of them is that he voluntarily provided all of the information necessary to the United States before commencing the action. And there's been nothing in his complaint which suggests that he satisfies that jurisdictional requirement. There's nothing in the declaration that he filed after we moved to dismiss below in which he was trying to establish that he was an original source, which makes any reference to the fact that he voluntarily provided the information to the government before commencing the action. If you're correct on that front and putting aside the timeliness of the appeal question, wouldn't the proper remedy be to remand and grant leave to amend or to redirections to dismiss without prejudice? Well, Your Honor, I would say that there is no basis to amend because he's already on his Fifth Amendment complaint. He already filed a declaration in order to carry his burden in the district court and try to actually establish that he was the original source. So he's already had the opportunity to do so. Would that be our call or would that be the district court's call? I think it would be the district court's call. And I think that the issue is that there's a number of different grounds here by which I believe the district court can be affirmed. The first to file meant that he — there was no action pending by which there could have been an amendment, but there was no jurisdiction to begin with. The first to file is not jurisdictional, correct? Correct, Your Honor. We have to address first the public disclosure rule, which at least in the pre-2010 incarnation, which applies here, is a jurisdictional rule, correct? Correct, as Mr. Henning agreed as well. So the separate and independent ground that under the statute there needs to be an identification of the relator as being voluntarily provided the information to the public. There is simply bright-line rule, very clear, nothing in the record that suggests that the relator has carried his burden to establish that. So the entire action should have been dismissed on that ground alone. If we were to go further, the facts also establish that he was not a direct and did not have direct and independent knowledge in a way that would require that he or would have carried his burden of establishing his status as an original source. With regard to 9b, it's another grounds that the case should have been dismissed on and was dismissed on. The court correctly determined that Mr. Hanks just didn't satisfy the requirements that recently the court identified in Church's as satisfying the 9b burden that he holds. So as part of what he needs to bring, the relator needs to bring the who, the what, the when, the where, the why of the alleged fraud. Now, the relator here decides that he's going to rely on different arguments, which there's no basis for under the court's jurisprudence. He claims that all he needs to do is allege that, allege all he knows, that is not the law. He alleges that, or he claims that all he needs to allege is that all claims are false and that that somehow gives him an out from 9b. These exceptions are not in the law. They're not in Church's. They're not in the cases that have followed Church's. And if they were, they would swallow 9b. Church's instead requires that the relator identify the statements that he contends were fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent, which is especially important here since, as the court knows, we have an independent ground that the discount safe harbor meant that we were not fraudulent. The district court correctly held that relator's broad brush approach to pleading was not one that satisfied 9b. He lumps together 18 defendants and alleges their participation jointly. He lumps together seven federal health care programs and just says that all of them were defrauded. He admits he cannot allege a single false claim that was actually submitted. He alleges hypothetical facts. And he doesn't even allege any particular certification that he claims was violated. So none of this is like the facts in Church's, which described and discussed whether there could be some pleading on information and belief with regard to submission. In Church's, there were specific ambulance runs that were identified with patient names, dates, times, patient condition, all of which led to the court determining, this Court determining, that there was sufficient factual basis to allow the relator to plead on information and belief two things, that there was a strong inference that claims actually had been submitted and that the information was peculiarly in the possession of the defendants. So none of that. The relator needs to come forward with the predicate specific facts even to get to that strong inference. I don't know whether you're the right lawyer to ask, but I assume in light of the fifth amended complaint that Mr. Hank's retaliation claim against Amgen is no longer pending in the district court? I think it was dismissed, Your Honor. It was dismissed. Thank you. With no further questions, thank you. Okay. Thank you very much, Mr. Kras. We'll now hear from Mr. Henig for three minutes. As to the issue of timeliness, Your Honors, what I would suggest is that to the extent that this Court is going to say that they're creating a bright-line rule that Mr. Hank should have known, this is a question of first impression. So the idea that Mr. Hank should have known is that he should have known that the rule prior to filing is not clear. So to the extent that this Court is going to create an exception. The Supreme Court in Eisenstein or whatever the name of the case is basically dismisses that argument, says it may be harsh, but that's the consequence of the jurisdictional rule. So why should we care about that? Well, I think it's a practical argument, Your Honor. And to the extent, yes, there is a harshness to that. But the idea here is that I'm just trying to, from my perspective, Your Honor, this is a case of first impression. I understand why for your purposes it would be harsh to say, I'm sorry, it wasn't timely, but surely just because you didn't have notice doesn't mean we should establish a rule for time immemorial that every other party can take 60 days to appeal in these circumstances if that's not actually the proper interpretation of the rules. But, Your Honor, I think it goes to the idea that it's an obvious rule. It's not an obvious rule. Defendants are asking you to create a rule that's not in Eisenstein, that is not a reflection of the bright-line test, is not consistent with the United States government's approach, and further is not consistent with the plain meaning of the statute. I mean, yes, it is to the extent that you're saying now that it has to be the United States was a party at the time of the dismissal. Even here, we can say that that was the case simply because there was no dismissal of the United States. I mean, Amgen was dismissed. The United States never was. So I think that that clearly speaks to the concept of the United States being a continuing party in this action. Going back to the public disclosure bar, there's no allegation in any of the complaints that the relator voluntarily provided information to the government about the scheme, correct? That is correct, Your Honor. So if we agree that there was a prior public disclosure, does it not follow that we have to remand for lack of subject matter jurisdiction because there's no allegations in the complaint that satisfy the exception to the public disclosure rule? That would be, as candidly, Your Honor, you are correct. However, that does not mean that Mr. Hanks cannot allege that. And one of the points here is that this is the first time the pleading in the Fifth Amendment complaint has been actually attacked. You know, when the complaints are under seal, that's not an issue for the government's purview in terms of investigation. So that's a simple matter of oversight on my part, and I want to take ownership of that. But it does not mean that it cannot be cured. It would be easily cured with amendment. So we'd ask that the ---- Right. Is it or is it not Mr. Hanks' position that he made disclosure to the government before filing the Fifth Amendment complaint, the amended complaint? Yes, Your Honor. He did? He did. Thank you. All right. Thank you, counsel. We will reserve. Well argued. Very interesting.